IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-CR-75-WKW |
| | ) | [WO] |
| CEDRIC BONDS | ) | |

## **MEMORANDUM OPINION AND ORDER**

### I. INTRODUCTION

In July 2012, Defendant was convicted on his guilty plea for conspiracy to possess with intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. He is serving a 154-month sentence (Doc. # 253), with a projected release date of November 23, 2022. *See* Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Oct. 22, 2021).

Before the court is Defendant's *pro se* motion for compassionate release (Doc. # 363), as supplemented (Docs. # 376, 378, 380, 381, 387), in which Defendant seeks to modify an imposed term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Government has responded in opposition. (Doc. # 373.) For the reasons to follow, the motion is due to be denied.

## II.  DISCUSSION

"[C]ourts are generally forbidden from altering a sentence once it becomes final."  *United States v. Bryant*, 996 F.3d 1243, 1251 (11th Cir. 2021), *petition for cert. filed*, No. 20-1732 (U.S. June 15, 2021).  Exceptions to this general prohibition lie "only when authorized by a statute or rule."  *United States v. Puentes*, 803 F.3d 597, 606 (11th Cir. 2015).  One such statutory provision, which commonly is referred to as the "compassionate release" provision, is 18 U.S.C. § 3582(c)(1)(A).  It offers courts a narrow reprieve to reduce a sentence:  Courts, on a defendant's motion,

> may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.

§ 3582(c)(1)(A)(i) (citing 18 U.S.C. § 3553(a)).

The policy statements that apply to § 3582(c)(1)(A) are found in U.S.S.G. § 1B1.13.  *See* U.S.S.G. § 1B1.13.  Section 1B1.13 "governs all motions under Section 3582(c)(1)(A)," including those filed by inmates, and, therefore, "district courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with 1B1.13."  *Bryant*, 996 F.3d at 1262 (citing § 1B1.13).  A sentence reduction must be consistent with § 1B1.13's definition of "extraordinary and compelling reasons," which delineates four qualifying categories:  (A) a

2

defendant's medical condition, which includes a "serious physical or medical condition"; (B) a defendant's age; (C) a defendant's family circumstances; and (D) a catch-all provision for "other reasons . . . [a]s determined by the Director of the Bureau of Prisons." § 1B1.13, cmt. n.1(A)–(D). The catch-all provision, as its text signifies, "does not grant discretion to courts to develop 'other reasons' that might justify a reduction in a defendant's sentence." *Bryant*, 996 F.3d at 1248; *see also id.* at 1262–65. Hence, application notes 1(A), (B), and (C) to § 1B1.13 constrain district courts in determining whether a defendant has established extraordinary and compelling reasons justifying a sentence reduction. In addition to mandating a determination that extraordinary and compelling reasons warrant a reduction, § 1B1.13 requires a judicial determination that "the defendant is not a danger to the safety of any other person or to the community." § 1B1.13(2).

> In sum, § 3582(c)(1)(A), as relevant here, contains three preconditions:
>
> [B]y dint of § 3582(c)(1)(A)'s plain text, a district court may reduce a term of imprisonment if (1) the § 3553(a) sentencing factors favor doing so, (2) there are "extraordinary and compelling reasons" for doing so, and, as relevant here, (3) doing so wouldn't endanger any person or the community within the meaning of § 1B1.13's policy statement.

*United States v. Tinker*, No. 20-14474, 2021 WL 4434621, at *2 (11th Cir. Sept. 28, 2021). *Tinker* held that a district court can examine these three conditions in any order it chooses. *Id.* If even one of these conditions is rejected, then a defendant is not entitled to a sentence reduction. *Id.* The defendant bears the "burden to establish

3

that he qualifie[s] for compassionate release." *United States v. Smith*, 856 F. App'x 804, 806 (11th Cir. 2021) (citing *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013)).

Section 3582(c)(1)(A) also contains an exhaustion requirement:

> The court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . .

§ 3582(c)(1)(A). This "exhaustion requirement is not jurisdictional[,]" but instead "is a claim-processing rule." *United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021).

While Defendant has demonstrated exhaustion of administrative remedies, he has not shown reasons that amount to extraordinary and compelling, nor has he shown that the balancing of the 18 U.S.C. § 3553(a) factors favors release. The denial of Defendant's motion rests on his failure of proof on these two conditions; analysis of the third condition will be skipped. Defendant also argues that, in lieu of compassionate release, the court should order the BOP to transfer the remainder of his sentence to home confinement (Doc. # 363, at 1, 3); however, the court lacks authority to do so. The following analysis addresses each of these points.

**A.    Defendant has shown that he exhausted his administrative remedies.**

The Government argues that Defendant's motion should be denied "without prejudice for failure to exhaust his administrative remedies," (Doc. # 373, at 11), but it does not include any reasoning to justify its argument.  On the other hand, Defendant has presented evidence that he submitted a written request for compassionate release to the warden of his correctional institution on July 14, 2020. (Doc. # 363-2.)  As of November 10, 2020, which is the date his original motion for compassionate release is deemed filed in this court[1] (*see* Doc. # 363, at 8), Defendant had not received a response from the warden.

Defendant's evidence establishes that, after submitting a request to the warden, he waited the required thirty days for a response from the warden prior to filing his compassionate release motion in the district court.  *See* § 3582(c)(1)(A). On these facts, the requirement of administrative exhaustion has been met.

**B.    Defendant has not shown an extraordinary and compelling reason to justify his early release.**

Defendant moves for compassionate release based upon four assertedly extraordinary and compelling reasons:  (1) the "unprecedented risks COVID-19"

---

[1] Under the prison mailbox rule, "a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Daniels v. United States*, 809 F.3d 588, 589 (11th Cir. 2015) (citation and internal quotation marks omitted).

5

pose to the incarcerated population at his institution (Doc. # 363, at 6; Doc. # 381); (2) his "particular susceptibility and vulnerability to COVID-19 based upon his medical conditions, which include type 2 diabetes, hypertension, and obesity (Doc. # 381, at 7; Doc. # 363), (3) his "extraordinary record of rehabilitation" while incarcerated (Doc. # 363, at 2); and (4) the alleged disparity between his sentence and the sentence he would receive under the current Guidelines (Doc. # 381, at 10). None of these reasons is extraordinary and compelling.

### 1. *Defendant's general fear of contracting COVID-19 while incarcerated*

Defendant's assertion that COVID-19 presents unprecedented risks to the inmate population at his institution espouses a general fear of his contracting COVID-19 while incarcerated. While Defendant understandably is concerned about the risks COVID-19 and any variants pose to him, this fear is not an extraordinary and compelling reason under § 3582(c)(1)(A)(i). *See generally United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."); *United States v. Gordon*, No. CR 11-20752, 2020 WL 4381948, at *4 (E.D. Mich. July 31, 2020) ("A generalized risk of contracting COVID-19, or potentially

developing the more severe symptoms associated with it, are not the type of 'extraordinary and compelling reasons' that justify compassionate release.").

Fortunately, on the COVID-19 front, since the filing of Defendant's motion for compassionate release, there have been two positive developments within the BOP. First, according to the BOP's website, the facility where Defendant is incarcerated—Federal Correctional Institution Butner Medium II ("FCI Butner Medium II")—currently has no active COVID-19 cases among its inmates and staff. *See* BOP Covid-19 Cases, available at https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 22, 2021). This is a marked improvement. *See id.*

Second, the BOP has administered 235,589 doses of the COVID-19 vaccine to its approximate 36,000 staff and to its 155,675 inmates. *See* BOP Covid-19 Vaccine Implementation, available at https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 22, 2021); BOP Statistics, https://www.bop.gov/about/ statistics/population_statistics.jsp (providing that inmate statistics are updated each Thursday) (last visited Oct. 22, 2021). The BOP's website indicates that, since the rollout of the COVID-19 vaccine, 1,092 staff members and 2,981 inmates have received both doses of the vaccine at Federal Correctional Complex Butner ("FCC Butner") and, thus, have been fully inoculated. *See* BOP COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 22,

2021). The BOP reports that currently there are 3,430 inmates at FCC Butner.[2] As the vaccination rates increase within the BOP's prisons, so will the protection inmates have from contracting COVID-19.[3] In fact, it is clear from these statistics that the vaccination rate at FCC Butner exceeds that of the general population in the state of Alabama. These considerations, in their totality, negate Defendant's reliance on the purported unprecedented risks of COVID-19 within his correctional institution.

2.  *Defendant's susceptibility to COVID-19 based upon his medical conditions (type 2 diabetes, hypertension, and obesity)*

Defendant has not established extraordinary and compelling reasons warranting compassionate release, notwithstanding that his medical conditions place him in a high risk category of serious complications from COVID-19. Being obese and having type 2 diabetes and high blood pressure (hypertension) are conditions that the Centers for Disease Control and Prevention ("CDC") has recognized "can make [a person] more likely to get severely ill from COVID-19." *See* CDC, People

---

[2] FCC Butner comprises four facilities: (1) FCI Butner Medium I (723 inmates); FCI Butner Medium II (1,280 inmates); FCI Butner Low (672 inmates); and FMC Butner (755 inmates). *See* BOP, https://www.bop.gov/locations/list.jsp (last visited Oct. 22, 2021). The vaccination statistics are available for FCC Butner as a whole but are not broken down by the individual institutions within FCC Butner.

[3] There is no evidence as to whether Defendant has been offered the vaccine and, if it has been offered, whether he has accepted or refused the vaccine.

with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 22, 2021). However, a serious medical condition, in order to rise to the level of extraordinary and compelling for purposes of obtaining a sentence reduction, must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility" and be one "from which [the inmate] is not expected to recover." § 1B1.13 cmt. n.1(A).

Although the court sympathizes with Defendant's circumstances, there is insufficient evidence demonstrating that his conditions rise to the level of decline required by § 1B1.13. Evidence is lacking that Defendant's ability to provide self-care within his institution is substantially diminished. The medical records demonstrate that Defendant has received care on many occasions from licensed medical-care providers, including physicians and nurse practitioners, that he has been prescribed medications to treat his conditions, and that he has undergone counseling for diabetes, diet, exercise, new medications, and access to care (to name a few). (*See* Doc. # 363-1; 373-1.) Defendant has not demonstrated that the medical personnel at his designated federal correctional institution are unable to provide adequate treatment for his health conditions. *See United States v. Sanchez*, No. 2:17CR337-MHT, 2020 WL 3013515, at *1 (M.D. Ala. June 4, 2020) (denying an inmate's motion for compassionate release in part based on the absence of evidence

"that the prison is unable to meet [the inmate's] medical needs" (citing § 3553(a)(2)(D))).

Furthermore, Defendant notified the court in March 2021 that he tested positive for COVID-19 on February 18, 2021. (Doc. # 380; Doc. # 381, at 3 n.2.) Although Defendant reported that he suffered "shortness of breath[], headaches, and dry coughs," (Doc. # 381, at 3 n.2), there is no indication in his subsequent filing on August 9, 2021, that he has suffered any residual effects from the virus (Doc. # 387). Defendant's recovery from COVID-19, although not dispositive, "would presumably weigh against a finding of extraordinary and compelling reasons." *United States v. Hald*, 8 F.4th 932, 939 n.5 (10th Cir. 2021) ("[L]ike access to vaccination, prior infection and recovery from COVID-19 would presumably weigh against a finding of extraordinary and compelling reasons." (citation omitted)).

### 3. *Defendant's Rehabilitation*

Defendant argues next that his rehabilitation while in prison is an extraordinary and compelling reason that warrants his early release. Defendant is to be commended for the steps he has taken to better himself while incarcerated. He has taken advantage of educational programs offered by the BOP and has earned a number of certificates for completing courses. (*See* Doc. # 363-4.) He also has received outstanding job evaluations during his employment for UNICOR. (*See* Doc. # 363-3.) However, "[r]ehabilitation of the defendant alone shall not be

considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see also* § 1B1.13 cmt. n.3 ("[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." (citing § 994(t)); *United States v. Hester*, No. 2:06-CR-193-ECM, 2020 WL 5535010, at *3 (M.D. Ala. Sept. 15, 2020) (rejecting the defendant's argument that post-sentencing rehabilitation can constitute an extraordinary and compelling reason for a sentence reduction). Hence, this ground is insufficient to independently qualify as an extraordinary and compelling reason warranting a sentence reduction.

**4.** *The alleged disparity between Defendant's sentence and the sentence he would receive under the current version of the Guidelines*

Defendant argues that there is a disparity between his sentence and the sentence he would receive under the current version of the Sentencing Guidelines and that this disparity constitutes an extraordinary and compelling reason for compassionate release. This ground fails for two reasons.

First, Defendant's contention that, if he were sentenced today, he would receive a two-level reduction in his base offense level based upon the quantity of methamphetamine involved is misguided.[4] Defendant was not sentenced under the

---

[4] Defendant's argument relies on Amendment 782. Promulgated in 2014, Amendment 782 provided a two-level reduction in the base offense levels for most drug quantities listed in the Drug Quantity Table in U.S.S.G. § 2D1.1(c). U.S.S.G. Supp. App. C, Amend. 782 (2014). It was made retroactive by Amendment 788 to the Sentencing Guidelines. U.S.S.G. Supp. App. C, Amend.

drug guidelines of U.S.S.G. § 2D1.1(c), but rather under the career offender guidelines of U.S.S.G. § 4B1.1, which resulted in an adjusted offense level of 37. (*See* Presentence Investigation Report ("PSR") ¶¶ 49, 50.)  Relatedly, Defendant makes an additional, but cursory, argument that, if sentenced today, he would not qualify as a career criminal under § 4B1.1(a) because "the inchoate offense of conspiracy does not constitute a 'controlled substance offense' under the definition of U.S.S.G. § 4B1.1(b)."  (Doc. # 381, at 10 n.9.)  He cites no authority for his argument, and relevant caselaw is to the contrary. *See United States v. Dupree*, 849 F. App'x 911, 912 (11th Cir. 2021) ("Dupree's argument that § 846 conspiracy is not a controlled substance offense is foreclosed by our holding in *Weir*." (citing *United States v. Weir*, 51 F.3d 1031 (11th Cir. 1995)).

     Second, even if Defendant were correct that his sentence reflected an unwarranted disparity, this reason is not one that the court could consider.  It is not articulated in § 1B1.13's application notes 1(A) through 1(C), which address "medical, age, and family circumstances."  *Bryant*, 996 F.3d at 1262.  As the Eleventh Circuit held in *Bryant*, only the BOP Director can find "other reasons" for compassionate release under § 1B1.13's catch-all provision in application note 1(D).

---

788 (2014).  Defendant's motion for a sentence reduction under Amendment 782 and 18 U.S.C. § 3582(c)(2) was denied in April 2017 "based on his status as a career criminal."  (Doc. # 362.)

*See id.* at 1264 (citing § 1B1.13 cmt. n.1(D)).  Because this ground is not explicitly identified in § 1B1.13's application notes 1(A) through 1(C), *see id.* at 1265, this court lacks authority to examine whether it falls within the catch-all exception.

**B.     The balancing of the § 3553(a) factors does not favor release.**

Even if Defendant had demonstrated an extraordinary and compelling reason justifying a sentence reduction, the § 3553(a) factors, considered in light of his "current circumstances" and "his circumstances at the time of his original sentencing," would not warrant early release.  *United States v. Groover*, 844 F. App'x 185, 188 (11th Cir. 2021).  These factors include the nature and circumstances of Defendant's offense, his history and characteristics, and the need "to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense," and "to protect the public from further crimes of the defendant."  § 3553(a)(1), (a)(2)(A), (C).

As to the nature and circumstances of Defendant's offense, his crime of conviction is a serious drug-trafficking offense for which he received a below-guidelines sentence.  *See* § 3553(a)(1).  Defendant was a manager of a conspiracy to distribute large quantities of methamphetamine in Alabama and Georgia, a role he continued to serve while incarcerated.  (PSR ¶¶ 13–35.)  Calculated conservatively, Defendant was held accountable for 859.57 grams of methamphetamine and 3.42 grams of cocaine.  (PSR ¶ 43.)

Defendant also has a lengthy criminal history spanning nearly twenty years that landed him in criminal history category VI with a career offender designation. That history demonstrates an escalating level of state and federal crimes and encompasses convictions for criminal trespass, for theft, for issuing a bad check, for making counterfeit federal reserve notes, and for drug-related convictions for possession of marijuana, possession with intent to distribute cocaine, and conspiracy to traffic methamphetamine. His convictions total twelve, and at least seven are felonies. (*See* PSR ¶¶ 49, 54–65, 68.) These factors do not bode well for Defendant's early release.

As part of Defendant's history and characteristics, the court has factored into the § 3553(a) balancing the risks that COVID-19 pose to Defendant's health, given his documented medical conditions. *See United States v. Rind*, 837 F. App'x 740, 744 (11th Cir. 2020) (observing that, under § 3553(a), the defendant's "medical conditions . . . are part of his history and characteristics"). However, the medical care Defendant has received while incarcerated, his apparent recovery from COVID-19, and the BOP's efforts to vaccinate its inmates and staff mitigate the severity of harm that he faces from COVID-19. The court also has considered Defendant's rehabilitative advances and his post-release plans for employment. *See United States v. Etienne*, No. 21-10009, 2021 WL 2853149, at *2 (11th Cir. July 8, 2021) (observing that a defendant's "significant efforts to rehabilitate himself" relate to his

"'history and characteristics'" (quoting § 3553(a)(1))). Considered collectively, however, the nature and circumstances of Defendant's offense, his history, and his characteristics do not favor release. *See* § 3553(a)(1).

Furthermore, under § 3553(a)(2), even though Defendant's projected release date is little more than a year away, Defendant's release today would undercut the gravity of his offenses, would diminish public respect for the law, and would weaken the value of a just punishment. And, while Defendant professes to have left his criminal profession behind and has taken positive steps in that direction, he has a history of returning to criminal activities after serving time in prison that cannot be ignored. To illustrate, Defendant committed the instant offense while serving a term of parole in Cobb County, Georgia Superior Court. (PSR ¶ 67.) Hence, Defendant's release also might fail to protect the public from additional crimes of Defendant. Based on consideration of all the circumstances, the balancing of the applicable § 3553(a) factors does not justify a sentence reduction.

**C. The court does not have authority to grant Defendant's request to order the BOP to place him on home confinement.**

Defendant makes an alternative request for the court to direct the BOP to place him on home confinement. (Doc. # 363, at 3.) The BOP has the sole discretion to designate an inmate's place of confinement, which includes placement in home confinement. *See Groover*, 844 F. App'x at 188 ("Separate from the federal courts'

power to grant a prisoner's motion for compassionate release, the Director of the BOP has independent authority to 'place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.' . . . Neither § 3624(c)(2) nor the CARES Act, however, give the judiciary any authority to grant an inmate's request for home confinement." (quoting 18 U.S.C. § 3624(c)(2) and the Coronavirus Aid, Relief, & Economic Security Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2))); *see also Sanchez*, 2020 WL 3013515, at *1 ("[T]he court lacks authority under the CARES Act to order the Bureau of Prisons to place [the inmate] on home confinement."). Defendant cannot obtain relief from this court in the form of a directive that the BOP place him on home confinement.

**D.     The sum of the record does not warrant a sentence reduction.**

For the foregoing reasons, Defendant has shown that he satisfied his administrative remedies. However, Defendant has not demonstrated extraordinary and compelling reasons under § 3582(c)(1)(A)(i), and the § 3553(a) factors weigh against a sentence reduction. He, thus, is not entitled to compassionate release. Finally, the court lacks authority to grant Defendant's request to direct the BOP to reduce Defendant's sentence and release him to home confinement.

## III.  ORDER

For the foregoing reasons, it is ORDERED that Defendant's *pro se* motion for compassionate release (Doc. # 363), as supplemented (Docs. # 376, 378, 380, 381, 387), is DENIED.

DONE this 22nd day of October, 2021.

                                                      /s/ W. Keith Watkins
                                    UNITED STATES DISTRICT JUDGE